133 Nev., Advance Opinion 99

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| JOSHUA CALEB SHUE,<br>Appellant,<br>vs.<br>THE STATE OF NEVADA,<br>Respondent. | No. 67428 |

**FILED**

DEC 14 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of child abuse and neglect, 29 counts of use of a child in the production of pornography, 10 counts of possession of visual presentation depicting the sexual conduct of a child, and open or gross lewdness. Eighth Judicial District Court, Clark County; Valerie Adair, Judge.

*Affirmed in part, reversed in part, vacated in part, and remanded.*

Howard Brooks, Public Defender, and William M. Waters, Deputy Public Defender, Clark County,
for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Jonathan VanBoskerck, Chief Deputy District Attorney, and Ryan J. MacDonald, Deputy District Attorney, Clark County,
for Respondent.

_____

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, PARRAGUIRRE, J.:

NRS 200.710(2) criminalizes the knowing use of "a minor to be the subject of a sexual portrayal in a performance." Likewise, NRS 200.730

17-43084

criminalizes the knowing and willful possession of "any film, photograph or other visual presentation depicting a person under the age of 16 years as the subject of a sexual portrayal." For the purposes of these statutes, NRS 200.700(4) defines "[s]exual portrayal" as "the depiction of a person in a manner which appeals to the prurient interest in sex and which does not have serious literary, artistic, political or scientific value."

In this appeal, we are asked to consider the appropriate units of prosecution under NRS 200.710(2) and NRS 200.730. Specifically, we first consider whether the State improperly charged appellant Joshua Shue with two counts of violating NRS 200.710(2) for each video file that depicts two minors. We conclude that the term "a minor" under NRS 200.710(2) unambiguously allows for a separate conviction for each minor used in each performance, and thus, Shue's 29 convictions under NRS 200.710 are not impermissibly redundant.[1] We also consider whether Shue was improperly convicted under NRS 200.730 on a per-image basis. We conclude that under *Castaneda v. State*, 132 Nev., Adv. Op. 44, 373 P.3d 108 (2016), the State improperly relied on a per-image unit of prosecution by failing to present evidence showing the mechanics of how Shue recorded and saved the

---

[1]The 29 counts relate to Shue's production of numerous video files (counts 3-4, 6-7, 9-10, 12-13, 15-16, 18-19, 21-22, 24-25, and 27-38) and a digital photo (count 2) found in his laptop. The video files are surreptitious recordings of Shue's then-girlfriend's children in the bathroom performing various bathroom activities. One of the children, H.I., was between the ages of 15 and 17, and the other, K.I., was between the ages of 11 and 13. The digital photo is an up-skirt picture of H.I.

various video files and digital images of children on his laptop. Thus, Shue is entitled to have 9 of his 10 convictions under NRS 200.730 vacated.[2]

Next, we consider whether Nevada's statutes barring the "sexual portrayal" of minors violate the First Amendment of the United States Constitution as being unconstitutionally overbroad or as a content-based restriction that fails strict scrutiny, or violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution as being impermissibly vague. We conclude that the statutes do not implicate protected speech and are not unconstitutionally vague on their face or as applied to Shue. Thus, we reject these claims.

Finally, we consider whether (1) sufficient evidence supports Shue's conviction of open or gross lewdness under NRS 201.210, and (2) any of Shue's asserted trial errors warrant reversal. We conclude that (1) there is insufficient evidence to support Shue's conviction under NRS 201.210, and (2) Shue's asserted trial errors do not warrant reversal. As such, we affirm Shue's 29 convictions under NRS 200.710(2), 1 conviction under NRS 200.730, and the single child abuse conviction under NRS 200.508. We further vacate Shue's remaining 9 convictions under NRS 200.730, and we reverse his single conviction under NRS 201.210.

## FACTS AND PROCEDURAL HISTORY

In the summer of 2010, Shue began periodically staying at his then-girlfriend's residence. At that time, Shue's then-girlfriend lived with her daughter, H.I., and her two sons, K.I. and F.I. During Shue's visits, H.I.

---

[2]The 10 counts relate to Shue's possession of the video files of K.I. in the bathroom performing various bathroom activities (counts 5, 8, 11, 14, 17, 20, 23, and 26), an image of one young male fellating another young male (count 40), and images of a boy with his genitalia and buttocks exposed (count 41).

was between the ages of 15 and 17, K.I. was between the ages of 11 and 13, and F.I. was between the ages of 10 and 12. In August 2012, Shue approached H.I. from behind and used a small digital camera to take a picture underneath her skirt. Shue showed H.I. the picture, and she asked him to delete it. Later that night, Shue kissed H.I. on the mouth without her consent. H.I. reported both incidents to the police the next day.

Thereafter, the police interviewed Shue and mentioned the possibility of searching his computer, and he indicated that such a search would reveal some things that are not "on the up-and-up." The police then obtained a warrant to search Shue's residence, and they seized Shue's digital camera and laptop. Shue's digital camera revealed a deleted up-skirt photo of H.I., and his laptop contained photographic images of underage males performing sexual activities or with their genitalia and buttocks exposed. Shue's laptop also contained several videos of H.I. and K.I. in the bathroom. Each video surreptitiously captures H.I., K.I., or both, fully nude performing bathroom activities. Shue appears in some of the videos, where he is either setting up or manipulating the camera.

A grand jury returned an indictment against Shue, charging him as follows: 1 count of child abuse and neglect under NRS 200.508 for taking an up-skirt photo of H.I., inappropriately kissing her, and surreptitiously recording her while she engaged in bathroom activities (count 1); 29 counts of use of a child in the production of pornography under NRS 200.710(2) for surreptitiously recording H.I. and K.I. while they were engaged in bathroom activities (counts 3-4, 6-7, 9-10, 12-13, 15-16, 18-19, 21-22, 24-25, and 27-38), and taking an up-skirt photo of H.I. (count 2); 10 counts of possession of a visual representation of sexual conduct or sexual portrayal of a child under 200.730 for possession of video files of K.I.

SUPREME COURT
OF
NEVADA

(O) 1947A

4

performing bathroom activities (counts 5, 8, 11, 14, 17, 20, 23, and 26), a digital image of one young male fellating another young male (count 40), and images of a boy with his genitalia and buttocks exposed (count 41); and 1 count of open or gross lewdness under NRS 201.210 for inappropriately kissing H.I. (count 39).

The trial jury found Shue guilty on all counts, and Shue received a life sentence with parole eligibility beginning after 10 years. The district court entered a judgment of conviction, from which Shue now appeals.

## DISCUSSION

On appeal, Shue argues that (1) 8 of his 29 convictions under NRS 200.710(2) are impermissibly redundant, (2) *Castaneda v. State* requires this court to reverse 9 of his 10 convictions under NRS 200.730, (3) Nevada's statutes barring the sexual portrayals of minors are unconstitutional, (4) the State presented insufficient evidence to support his conviction of open or gross lewdness, and (5) his asserted trial errors warrant reversal. We address these arguments in turn.

*Shue's convictions under NRS 200.710(2) are not impermissibly redundant*

At issue here are those counts wherein a single video file resulted in two charges against Shue under NRS 200.710(2) because the videos captured both H.I. and K.I.[3] Shue argues that 8 of his 29 convictions

---

[3]There are 16 charges against Shue fitting that description: (1) counts 3 and 4 relate to file 0058, (2) counts 6 and 7 relate to file 0031, (3) counts 9 and 10 relate to file 0005, (4) counts 12 and 13 relate to file 0007, (5) counts 15 and 16 relate to file 0006, (6) counts 18 and 19 relate to file 0057, (7) counts 21 and 22 relate to file 0089, and (8) counts 24 and 25 relate to file 0124.

under NRS 200.710(2) are impermissibly redundant because he can only be penalized for *each performance* proved.[4] The State counters that Shue can be charged for *each minor* used in each performance. We agree with the State; therefore, we affirm Shue's 29 convictions under NRS 200.710(2).

As an initial matter, we construe Shue's argument as a unit of prosecution determination. *See Castaneda*, 132 Nev., Adv. Op. 44, 373 P.3d 108, 110 (2016). "[D]etermining the appropriate unit of prosecution presents an issue of statutory interpretation and substantive law." *Id.* (internal quotation marks omitted). "[W]e review questions of statutory interpretation de novo." *State v. Lucero*, 127 Nev. 92, 95, 249 P.3d 1226, 1228 (2011). "[W]hen a statute is clear on its face," we must afford the statute its plain meaning. *Id.* (internal quotation marks omitted).

NRS 200.710(2) makes it a category A felony when a person "knowingly uses, encourages, entices, coerces or permits *a minor* to be the subject of a sexual portrayal in a performance." (Emphasis added.) In *Castaneda*, we observed that courts interpreting criminal statutes for the proper unit of prosecution have consistently found them ambiguous when "the object of the offense has been prefaced by the word 'any.'"[5] 132 Nev., Adv. Op. 44, 373 P.3d at 111 (internal quotation marks omitted). Those courts reasoned that the word "any" can be interpreted "to fully encompass (*i.e.*, not necessarily exclude any part of) plural activity, and thus fails to unambiguously define the unit of prosecution in singular terms." *Id.*

---

[4]Shue raised this argument in a pretrial habeas petition, which the district court rejected.

[5]We note *Castaneda* was issued after Shue was charged and convicted under NRS 200.730, and thus, the district court did not have this court's guidance on the present matter.

SUPREME COURT
OF
NEVADA

(O) 1947A

6

(internal quotation marks omitted). In contrast to the word "any," the term "a minor" under NRS 200.710(2) plainly denotes the object of the offense in singular terms and necessarily precludes any contemplation of the plural. Thus, we conclude that NRS 200.710(2) plainly defines the proper unit of prosecution as each distinct minor who is the subject of a sexual portrayal in a performance.

In light of the appropriate unit of prosecution under NRS 200.710(2), we conclude that Shue was properly convicted for each minor depicted in each video file, and we affirm all 29 of his convictions under NRS 200.710(2).

*Shue is entitled to have 9 of his 10 convictions under NRS 200.730 vacated*

Shue argues that 9 of his 10 convictions under NRS 200.730 must be vacated pursuant to *Castaneda v. State* because the State did not allege or prove that he possessed the disputed images and video files at different times or locations. We agree.

Shue did not raise this argument below; however, we exercise our discretion to consider it. *Walch v. State*, 112 Nev. 25, 30, 909 P.2d 1184, 1187 (1996). "To amount to plain error, the error must be so unmistakable that it is apparent from a casual inspection of the record. In addition, the defendant must demonstrate that the error affected his or her substantial rights, by causing actual prejudice or a miscarriage of justice." *Martinorellan v. State*, 131 Nev., Adv. Op. 6, 343 P.3d 590, 593 (2015) (internal quotation marks and citations omitted).

In *Castaneda*, we interpreted NRS 200.730 to determine the proper unit of prosecution for cases involving the possession of child pornography. 132 Nev., Adv. Op. 44, 373 P.3d at 110. NRS 200.730 criminalizes the knowing and willful possession of "'*any film, photograph or other visual presentation* depicting a person under the age of 16 years as the

Supreme Court
OF
Nevada

(O) 1947A

7

subject of a sexual portrayal or engaging in . . . sexual conduct.'" *Id.* (quoting NRS 200.730). We held that the word "any" was ambiguous because it could mean "(1) one; (2) one, some, or all regardless of quantity; (3) great, unmeasured, or unlimited in amount; (4) one or more; and (5) all." *Id.* at 111 (internal quotation marks omitted). Therefore, it was unclear whether NRS 200.730's plain text allows a person to be charged for each image (i.e., if "any" means one), or for each instance that a person possessed child pornography (i.e., if "any" means one or more). *Id.* After determining that "other legitimate tools of statutory interpretation" provided no material guidance, *id.* at 111-14, we held that the rule of lenity required "any" to be construed in the accused's favor such that the charges under NRS 200.730 could not be brought on a per-image basis. *Id.* at 114 ("We recognize the policy goals behind tying punishment to the number of child victims depicted in, and thus harmed by, the images possessed. Consistent with the rule of lenity, though, we are obligated to construe statutes that contain ambiguity in the proscribed conduct in the accused's favor."). As such, we held that "simultaneous possession at one time and place of [multiple] images depicting child pornography constituted a single violation of NRS 200.730." *Id.* at 115. Accordingly, we vacated all but one of the defendant's convictions under NRS 200.730. *Id.* at 116.

Like in *Castaneda*, here, the State pursued Shue's convictions under NRS 200.730 on a theory that Shue could be charged and convicted on a per-image basis for each of the files found on his laptop. First, the State's closing argument shows it sought to secure convictions for possessing child pornography on a per-image/video basis. Second, Shue's indictment and the submitted jury instructions indicate that possession

counts 5, 8, 11, 14, 17, 20, 23, 26, and 40 specify a particular file underlying each possession charge, as opposed to a specific date or location.

The State argues that 8 of the 10 possession counts are distinguishable from *Castaneda* because H.I. testified that each video was created on a different day, thus providing sufficient evidence of distinct acts of possession. We disagree because the State failed to clarify the mechanics of how Shue recorded and saved the files.[6] For example, it is unknown whether Shue (1) recorded for a period, transferred the videos onto his computer, and then returned the camera to the bathroom; or (2) recorded continuously over a long period of time before transferring everything onto his laptop at once. Instead of presenting evidence of distinct acts of possession, the State relied on the circumstances surrounding the video recordings, primarily that the events depicted on the videos occurred on different days, to infer distinct acts of possession. That inference alone, however, is insufficient to establish "distinct crimes of possession" in light of our holding in *Casteneda*. *Id.* at 115.

Considering the unit of prosecution set forth in *Castaneda* and the record in this case, we conclude that Shue could be convicted of no more than one count of possessing child pornography. The error is clearly prejudicial. We therefore affirm 1 conviction (count 40) for violation of NRS 200.730 and vacate the other 9 possession convictions (counts 5, 8, 11, 14, 17, 20, 23, 26, and 41).

---

[6]Although Detective Vicente Ramirez testified that it is possible to determine when a video or image file is created, modified, or last accessed on a computer, he further testified that he was unable to provide the download dates for the video files of H.I. and K.I.

*Nevada's statutes barring the "sexual portrayals" of minors do not violate the First Amendment or the Due Process Clause of the United States Constitution*

On appeal, Shue argues that Nevada's statutes barring the sexual portrayals of minors violate the First Amendment as being unconstitutionally overbroad because they "potentially criminalize[] all manner of visual images of minors." We disagree.[7]

"The constitutionality of a statute is a question of law that we review de novo." *Cornella v. Justice Court*, 132 Nev., Adv. Op. 58, 377 P.3d 97, 100 (2016) (internal quotation marks omitted). "Statutes are presumed to be valid, and the burden is on the challenging party to demonstrate that a statute is unconstitutional." *Id.* (internal quotation marks omitted). Moreover, "[t]his court construes statutes, if reasonably possible, so as to be in harmony with the constitution." *Id.* (internal quotation marks omitted); *see also State v. Castaneda*, 126 Nev. 478, 481, 245 P.3d 550, 552 (2010) (providing that "we adhere to the precedent that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality" (internal quotation marks omitted)).

"Whether or not a statute is overbroad depends upon the extent to which it lends itself to improper application to protected conduct." *Scott v. First Judicial Dist. Court*, 131 Nev., Adv. Op. 101, 363 P.3d 1159, 1162 (2015) (internal quotation marks omitted). In particular, "the overbreadth doctrine invalidates laws that infringe upon First Amendment rights." *Id.* (internal quotation marks omitted). Moreover, "[w]e have held that even minor intrusions on First Amendment rights will trigger the overbreadth

---

[7]Although Shue did not raise this constitutional issue below, we exercise our discretion to consider it on appeal. *McCullough v. State*, 99 Nev. 72, 74, 657 P.2d 1157, 1158 (1983).

doctrine"; however, "we have warned that the overbreadth doctrine is strong medicine and that a statute should not be void unless it is substantially overbroad in relation to the statute's plainly legitimate sweep." *Id.* (internal quotation marks omitted). Finally, an overbroad statute may nonetheless be saved by adopting "a limiting construction or partial invalidation [that] narrows [the statute] as to remove the seeming threat or deterrence to constitutionally protected expression." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (internal quotation marks omitted).

"The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *United States v. Williams*, 553 U.S. 285, 293 (2008). When "construing a statute, our analysis begins with its text," and we will "attribute the plain meaning to a statute that is not ambiguous." *Sheriff v. Andrews*, 128 Nev. 544, 546, 286 P.3d 262, 263 (2012) (internal quotation marks omitted).

NRS 200.700(4) defines "'[s]exual portrayal'" as "the depiction of a person in a manner which appeals to the prurient interest in sex and which does not have serious literary, artistic, political or scientific value." The United States Supreme Court has defined "prurient" as "a shameful or morbid interest in nudity, sex, or excretion," or involving "sexual responses over and beyond those that would be characterized as normal." *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 498 (1985) (internal quotation marks omitted). Thus, NRS 200.700(4) plainly defines sexual portrayal as the depiction of a minor in a manner that appeals to a shameful or morbid interest in the sexuality of the minor, and which does not have serious literary, artistic, political, or scientific value, according to the views of an average person applying contemporary community standards. As explained

below, we conclude that Nevada's statutes barring the sexual portrayal of minors are not overbroad because the type of conduct proscribed under NRS 200.700(4) does not implicate the First Amendment's protection.

In *Osborne v. Ohio*, the United States Supreme Court upheld the constitutionality of an Ohio statute proscribing nude depictions of minors "because the statute, as construed by the Ohio Supreme Court on [the appellant's] direct appeal, plainly survives overbreadth scrutiny."[8] 495

---

[8]The relevant Ohio statute provides that

(A) No person shall do any of the following:

. . . .

(3) Possess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity, unless one of the following applies:

(a) The material or performance is sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, clergyman, prosecutor, judge, or other person having a proper interest in the material or performance.

(b) The person knows that the parents, guardian, or custodian has consented in writing to the photographing or use of the minor in a state of nudity and to the manner in which the material or performance is used or transferred.

U.S. 103, 113 (1990). In particular, the Ohio Supreme Court interpreted the statute to prohibit "the possession or viewing of material or performance of a minor who is in a state of nudity, where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals, and where the person depicted is neither the child nor the ward of the person charged."[9] *Id.* (internal quotation marks omitted). Thus, "[b]y limiting the statute's operation in this manner, the Ohio Supreme Court avoided penalizing persons for viewing or possessing innocuous photographs of naked children." *Id.* at 113-14.

Here, NRS 200.700(4)'s definition of "sexual portrayal" necessarily involves a depiction meant to appeal to the prurient interest in sex. Moreover, the phrase, "which does not have serious literary, artistic, political or scientific value," sufficiently narrows the statute's application to avoid the proscription of innocuous photos of minors. NRS 200.700(4); *see also Osborne*, 495 U.S. at 113 n.10 ("So construed, the statute's proscription is not so broad as to outlaw all depictions of minors in a state of nudity, but rather only those depictions which constitute child pornography." (internal quotation marks omitted)). Finally, the type of conduct that Shue was convicted of pursuant to NRS 200.710(2)—surreptitiously recording his then-girlfriend's minor children naked in the bathroom performing

_____

*Osborne*, 495 U.S. at 106-07 (quoting Ohio Rev. Code Ann. § 2907.323(A)(3) (1989)).

[9]The majority in *Osborne* notes that the dissent took issue with Ohio's definition of nudity to include depictions of other body parts beyond the genitals. 495 U.S. at 114 n.11. However, the majority explained that such "distinction between body areas and specific body parts is [not] constitutionally significant"; rather, "[t]he crucial question is whether the depiction is lewd." *Id.*

bathroom activities and taking an up-skirt photo of one of the children—is clearly proscribed under the statute's plain language and does not implicate the First Amendment's protection. *See New York v. Ferber*, 458 U.S. 747, 757 (1982) (providing that "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance" and that the United States Supreme Court has therefore "sustained legislation aimed at protecting the physical and emotional well-being of youth even when the laws have operated in the sensitive area of constitutionally protected rights").

As such, Nevada's statutes barring the sexual portrayal of minors necessarily demonstrate a "core of constitutionally unprotected expression to which it might be limited," *City of Houston v. Hill*, 482 U.S. 451, 468 (1987) (internal quotation marks omitted). Because NRS 200.700(4) does not implicate protected speech under the First Amendment, we conclude that Nevada's statutes barring the sexual portrayal of minors are not overbroad.[10]

---

[10]Shue also argues on appeal that Nevada's statutes barring the sexual portrayal of minors (1) violate the First Amendment as a content-based restriction that fails strict scrutiny, and (2) violate the Due Process Clause as being impermissibly vague. Because we conclude that such statutes do not implicate protected speech under the First Amendment, we reject the first argument. We also reject the second argument and conclude that the statutes are not unconstitutionally vague on their face or as applied to Shue. First, Shue's conduct was clearly proscribed under the statutes. *See Sheriff v. Martin*, 99 Nev. 336, 340, 662 P.2d 634, 637 (1983) ("A challenger who has engaged in conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."). Furthermore, Shue has failed to satisfy his burden and demonstrate that "vagueness so permeates the text" of the statutes such that they "would still be invalid if void in most circumstances." *Flamingo Paradise Gaming, LLC v. Chanos*, 125 Nev. 502, 513, 217 P.3d 546, 554 (2009).

*There is insufficient evidence to support Shue's open or gross lewdness conviction*

Shue argues that there is insufficient evidence to support his open or gross lewdness conviction under NRS 201.210. We agree.

"[I]t is the function of the jury, not the appellate court, to weigh the evidence and pass upon the credibility of the witness." *Walker v. State*, 91 Nev. 724, 726, 542 P.2d 438, 439 (1975). Therefore, "the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Milton v. State*, 111 Nev. 1487, 1491, 908 P.2d 684, 686-87 (1995) (internal quotation marks omitted).

Count 39 of the indictment charged Shue with committing open or gross lewdness by "inappropriately kissing said [H.I.] on the mouth." The trial testimony surrounding the kiss is very limited, but, viewing it in the light most favorable to the prosecution, it is as follows: (1) Shue kissed H.I. on the mouth without her permission; (2) Shue's kiss made H.I. feel uncomfortable and scared; (3) H.I. could not recall whether the kiss was a "peck" or a deeper kiss; and (4) Shue later told police that he found H.I. attractive, but that he would never act on that attraction.

NRS 201.210 criminalizes "[a] person who commits any act of open or gross lewdness." Although the statutory language provides little guidance, this court's precedent has more fully defined "open," "gross," and "lewdness." *See Berry v. State*, 125 Nev. 265, 280-82, 212 P.3d 1085, 1095-96 (2009), *abrogated on other grounds by State v. Castaneda*, 126 Nev. 478, 483, 245 P.3d 550, 554 (2010). "Lewd" has an ordinary, well-established definition: (1) "pertaining to sexual conduct that is obscene or indecent; tending to moral impurity or wantonness," (2) "evil, wicked or sexually unchaste or licentious," and (3) "preoccupied with sex and sexual desire;

Supreme Court
OF
Nevada

(O) 1947A

15

lustful." *Id.* at 281, 212 P.3d at 1096 (internal quotation marks omitted). The words "open" and "gross" modify the word "lewdness," *id.* at 280-81, 212 P.3d at 1095-96; therefore, criminal liability under NRS 201.210 requires some underlying lewd act.

Here, even after viewing the evidence in the light most favorable to the prosecution, there is no evidence that Shue committed a lewd act when he kissed H.I. A kiss on the mouth, without more, does not constitute lewd conduct because it is not lustful or sexually obscene. Although the circumstances surrounding the kiss may be inappropriate, there is simply insufficient testimony about the nature of the kiss. In addition, the State's indictment alleged that the kiss itself was the lewd act. Thus, in light of the evidence, we hold a rational fact-finder could not conclude beyond a reasonable doubt that Shue's kiss constituted a lewd act. Therefore, we reverse Shue's conviction of open or gross lewdness.[11]

Finally, we have considered Shue's other assignments of error and conclude that they are without merit or do not warrant relief.[12]

## CONCLUSION

We conclude that (1) Shue's 29 convictions under NRS 200.710(2) are not impermissibly redundant; (2) pursuant to *Castaneda v.*

---

[11]Shue also argues that there is insufficient evidence to support his other convictions under NRS 200.710(2), NRS 200.730, and NRS 200.508 (child abuse). Having considered these arguments, we conclude that there is sufficient evidence to support Shue's other convictions.

[12]Specifically, Shue argues that (1) the district court erroneously instructed the jury, (2) the State committed prosecutorial misconduct, (3) the district court improperly allowed a lay witness to provide expert testimony, (4) Count 1 of his indictment failed to adequately notify him of the State's theory of prosecution for child abuse under NRS 200.508, and (5) the district court erred in limiting the scope of his cross-examination of H.I.

*State*, the State did not establish multiple distinct violations of NRS 200.730, and therefore we vacate 9 of Shue's 10 convictions under NRS 200.730; (3) Nevada's statutes barring the production or possession of images depicting the sexual portrayal of minors do not violate the First Amendment or the Due Process Clause of the United States Constitution; (4) there is sufficient evidence to support Shue's convictions under NRS 200.710(2), NRS 200.730, and NRS 200.508, but not NRS 201.210; and (5) none of Shue's asserted trial errors warrant reversal.

Thus, we affirm Shue's 29 convictions under NRS 200.710(2) (counts 2-4, 6-7, 9-10, 12-13, 15-16, 18-19, 21-22, 24-25, and 27-38), his remaining conviction under NRS 200.730 (count 40), and his single conviction under NRS 200.508 (count 1). However, we vacate his other 9 convictions under NRS 200.730 (counts 5, 8, 11, 14, 17, 20, 23, 26, and 41), and we reverse his single conviction under NRS 201.210 (count 39). Accordingly, we remand for entry of an amended judgment of conviction consistent with this opinion.

_____, J.
Parraguirre

We concur:

_____, C.J.
Cherry

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Pickering

_____, J.
Stiglich

(O) 1947A